FILED
07/17/2019
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
May 20, 2019 Session

## ALBERT J. AHLER v. CHARLES STEFFAN SCARBOROUGH ET AL.

**Appeal from the Circuit Court for Roane County**
**No. 15-CV-111       Elizabeth Asbury, Chancellor**

_____

### No. E2018-01102-COA-R3-CV
_____

Plaintiff filed a complaint for declaratory judgment seeking to declare Old Stage Road a public road. Plaintiff sought to use the disputed road to access his property; his property does not abut the road. The plaintiff, asserting that he was also there on behalf of the public, also sought to have the road declared public in order to access defendants' private property for recreation. Defendants filed a counterclaim seeking a declaratory judgment. Defendants argued that absent a ruling related to defendants' property rights, the plaintiff and those he represents were likely to interpret any ruling favorable to them as a declaration of their right to trespass upon defendants' private property for recreational purposes, instead of a public road to gain access to some lawful destination. After a trial, the court held that defendants had shown that public use of the area in question had been abandoned. The disputed road was held to be the private property of defendants. Plaintiff appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J. and THOMAS R. FRIERSON, II, J., joined.

Robert Wilkinson, Oak Ridge, Tennessee, for the appellant, Albert J. Ahler.

C. Douglas Fields, Crossville, Tennessee, for the appellees, Charles Steffan Scarborough and Anne K. Scarborough.

- 1 -

# OPINION

## I.

In 1823, George Gordon received a grant to construct a roadway; known as Old Stage Road, it became one of the early routes to Middle Tennessee. The road traverses the Whites Creek Gorge down the mountain to the foot of Walden's Ridge, at U.S. Highway 27, near the present community of Eagle Furnace. The earliest map of the road in record is an 1834 map showing the road denominated as Gordon's Road. Mr. Gordon charged a toll to use the road for 35 years. Thereafter, the road became open for public use. The most recent topographical maps have edited Old Stage Road such that it is no longer reflected as a road.

Plaintiff owns approximately 105 acres; his tract of land is approximately 975 feet from the disputed road. Defendants' property consists of approximately 360 acres in Roane and Rhea Counties. Approximately 164 acres of defendants' property is subject to a Deed of Conservation Easement with the Tennessee Parks and Greenways Foundation. A portion of defendants' property includes the disputed Old Stage Road.

In 2014, plaintiff petitioned Roane County Road Committee requesting that Old Stage Road be opened. The road is not listed as a county road, and the county did not take any action to re-open the road. Plaintiff alleges that

> [a] called meeting of the Roane County Road Committee was held in June 2014. There were approximately 30 people there to consider if Old Stage Road was a county road. Meeting concluded with '[i]t is not a county road, but it is a public road.' Minutes of this meeting were taken but 'lost.'

On September 15, 2015, plaintiff filed a complaint for declaratory judgment against Mr. and Mrs. Scarborough seeking to declare Old Stage Road a public road for his and the public's use. Plaintiff desires to use Old Stage Road, because it is the easiest means of accessing his property. However, he admits that it is not his only access. The second available access to his property is allegedly difficult to traverse even with a four-wheel drive vehicle. Previously, there was an additional means of accessing his property off of U.S. Highway 70, but it was closed by the state and no one is allowed to use it any longer. Plaintiff ultimately aims to access his property using Old Stage Road by way of Black Creek Road.

The public seeks access to the road in order to swim, fish, hunt, etc. in the creek and the surrounding area. However, the relevant portions of the creek, and the area surrounding it, are defendants' private property. Defendants argued that there is therefore no interest in establishing a public road to access any destination other than their private

property. Defendants maintain that even if a public road were deemed to exist, that the lands beside Whites Creek and under Whites Creek are their private property and not subject to access, except by trespass, from any road sought to be created or recreated. Defendants argued that at the heart of this matter is an underlying effort to assert a public road in order to open up defendants' private property to public use. Defendants have not opened their land or dedicated it as any kind of public area.

Defendants answered plaintiff's complaint; in a subsequent motion to dismiss, defendants alleged that Gordon Dale Fourman and Tennessee Parks and Greenways Foundation were necessary parties. Pursuant to an order entered October 18, 2016, the court determined that the proper remedy would not be dismissal; it instead granted defendants leave to file counterclaims, and plaintiff the opportunity to amend with instruction to add the two additional parties: Gordon Dale Fourman and Tennessee Parks and Greenways. The court further noted that the order is limited to the addition of only these two parties based on the understanding that plaintiff only seeks to declare the portion of road as public that extends to Willet Mountain Road, and that that portion will not extend beyond the property of Gordon Dale Fourman.

On November 16, 2016, defendants filed their counterclaims seeking a declaratory judgment. Defendants stated that absent a ruling related to defendants' property rights, the plaintiff and those he represents were likely to interpret any ruling favorable to them as a declaration of their right to trespass upon defendants' property for recreational purposes, instead of a public road to gain access to some lawful destination. Accordingly, if a public road is found to exist, defendants asked the court to render a declaratory judgment on the following issues:

1. Whether users of any public road found to exist have any legal right to leave the boundaries of the road and enter upon Counter-Petitioners['] land to access the creek or any other portion of their property for any reason without Counter-Petitioners['] permission to do so[.]

2. Whether Counter-Petitioner[s'] property rights extend to the ground over which White[']s Creek flows[.]

3. Whether the [c]ourt can issue an order barring users of the road from deviating from its boundaries if Counter-Petitioners enjoy the customary rights of a private property owner as they will assert they do[.]

On September 6, 2017, on a motion for partial summary judgment filed by defendants, the court held that Whites Creek is a "non-navigable stream where it passes through and/or is the boundary of the [defendants'] properties." It held that a survey

performed by Richard Bailer accurately identifies the boundaries of the defendants' properties in relation to Whites Creek. The court further declared that, as a non-navigable stream, defendants own the property beside the stream and the land underneath the stream to the extent of their property boundaries. The court also held that

> [i]ndividuals that cross the [defendants'] property to access White's Creek or enter the Creek to the extent of the [defendants'] boundaries, would be committing a trespass if such individuals do not have the permission of the [defendants'] or their successors or assigns to do so.

Following the partial summary judgment, the parties decided to withdraw their jury demand. Upon the court's own motion, the trial judge subsequently recused himself. On September 28, 2017, Chancellor Elizabeth C. Asbury was designated to try the matter by interchange.

On February 15, 2018, a trial was held. Several witnesses testified regarding the existence and/or non-existence of Old Stage Road, and whether or not use of the disputed road had been abandoned.

Plaintiff testified that he is an 85-year old retired physician. He purchased his property in 1964. As of 2017, plaintiff had only been to his property twice – once in 1989 and once in 1996. He did not access his property by Old Stage Road either time. Plaintiff has never had his property surveyed, and he does not know where his boundaries lie.

As noted above, plaintiff testified that he seeks to open the disputed road, because it is the most convenient way to access his tract of land. He acknowledged that there is an additional public access road that he was unaware of until after he filed the lawsuit. He has never driven on Old Stage Road, but "knew other people had." He alleges that Old Stage Road is walkable, but that in or around 2000, three boulders were placed at the intersection of Black Creek Road and Old Stage Road in an attempt to prevent people from accessing Old Stage Road. He states that individuals continued to use the road nonetheless.

He testified that he has walked Old Stage Road; he recalled that there were no homes in the area other than defendants', and that there were not any driveways, stores, or other commercial activity in the area. He acknowledged that Old Stage Road has been edited off current map iterations, including the county tax map. Despite the foregoing, he "believe[s] people ought to be able to park on Mr. Scarborough's property to go out and fish and swim and enjoy themselves."

Defendants asked plaintiff whether he was present when an individual went onto Mr. Scarborough's property, cut the cable blocking a road at the top of the mountain, cut

down some trees, and cleared some roadway – he stated "I was there;" he summarily responded: "[d]isputable property line." Defendants then asked plaintiff:

> Q: For the fellow…that doesn't know where his property line is and has never had his property surveyed, you dispute the boundary line; is that correct?
>
> A: Absolutely.

James Hill then testified; he is a registered surveyor. On a Tennessee Valley Authority map, he identified Whites Creek, and identified the disputed roadway as a trail. He recalled it previously being used as an access to Whites Creek for swimming and fishing. He has not used the alleged road in many years; his last familiarity with it was from 37 years ago. William Adams testified that he last visited the area when he was a child, and he last used the road 30 years ago. At that time, a car could be driven down the road.

J.W. Long testified that he was familiar with the road. He recalled the area being used for swimming and hunting. He was last in the area about two years ago; he parked on Black Creek Road and walked down to the creek. On that occasion, Mrs. Scarborough encountered Mr. Long and told him that he was trespassing. He left the area.

Wayne Johnson recalled that the alleged road was used as an access for swimming and hunting, but it has been 20 years since he last used the road. Dwayne Cooper testified that the area in question had been used for swimming, fishing, ATV riding, and hunting by him and other people. He recalled last using the area between 1980 and 1990. He testified that the area is currently overgrown and there is debris blocking the road. In 2015, he testified that he removed bolts out of a cable barricade in order to enter defendants' property.

Richard Bailey, a licensed surveyor testified that there is no evidence of a road next to Whites Creek. He was able to identify an "Old Gordon Road" survey pin; some believe this road and Old Stage Road are the same.

Jake Alman, a forester and real estate broker, testified that he is familiar with defendants' property and with Whites Creek. He examined a sycamore that sits where the old road was allegedly located; he determined it was 16 years old. He could not identify a distinct roadway.

Jason O'Shell, a forester with Tennessee Division of Forestry testified that there was a fire in defendants' area in 2012, but the steep terrain and creek prevented access by Old Stage Road. Christy Henderson, a representative of the Land Conservancy and Parks

Foundation, testified regarding the Conservation Easement Agreement with defendants. The foundation monitors the property on an annual basis; her records do not reflect any active public road through the area. She testified that the area some are calling Old Stage Road looks like a trail.

Danny Sherrill is a stone harvester, and he harvested stone from the property defendants own from about 1968-1973, and then again around 1991 to 1992. He accessed the stone property by Black Creek Road. He testified that to access the disputed area with a vehicle would require blasting off a bluff; he recalled that people walked down if they wanted to swim in the area.

Stuart Steele, a real estate broker and timber cruiser, testified that the area in question was a skid trail that cannot be driven down. He testified that in 1991-1992 storm damage occurred and Whites Creek took out the road.

Randy Ellis, a member of the Roane County Commission testified that the road could be identified up to a point and then it stops. The County Commission did not open the road, because Old Stage Road is not a county road that has been dedicated to and accepted by Roane County. He testified that Black Creek Road ends where the asphalt ends and that the area beyond that is not a county road. He did not know if the area in dispute was a public road.

Defendant Mr. Scarborough testified that he purchased his property in 1991. Other than defendant and his family, no one else lives on the road; there are no businesses in the area, and there is no commercial activity. A large storm came in early 1992, and due to the disputed road's proximity to Whites Creek, erosion from the creek caused some of the road to wash away. He testified that, over time, large boulders have fallen and blocked the road, and that no one has ever come to remove them.

In the early 1990s, defendants opened up a portion of their property so that individuals could access the creek. They established rules, and even installed a trash receptacle to help facilitate a clean environment. However, the rules were not followed and the receptacle was ultimately stolen. Defendants had recurring issues with individuals coming through their woods, leaving garbage, stealing rock, cutting down trees, using the creek and leaving behind a mess. Defendants also experienced arson, and the firetrucks had difficulty reaching their property.

As a result, the defendants began to take back control of the area in 1994, and further restricted access to the property in 2004. Defendants state there was no activity in the area from 2009-2015. The last witness, Thomas Scarborough, defendants' son, testified that the boulder blocking the disputed road fell as a result of a storm in the 1990s, which is contested by plaintiff.

On March 19, 2018, the trial court entered its "Findings of Fact and Conclusions of Law." The court stated that "the issue to be determined is whether Old Stage Road is a public road." The court first looked to whether or not the disputed road is classified as public or private. The court cited ***Lay vs. Wallace***, 2013 WL 654360, at *1 (Tenn. Ct. App. Feb. 21, 2013) for the proposition that

> [a] public road may be created by an act of the public authorities, or the express dedication of the owner, or an implied dedication by means of the use by the public and acceptance by them with the intention of the owner that the use become public, or by adverse user for a period of 20 years continuously creating a prescriptive right. Dedication arises from an owner's offer of land for public use, and a public acceptance of the offer.
>
> When an implied dedication is claimed, the focus of the inquiry is whether the landowner intended to dedicate the land to a public use. To establish a dedication by implication there must be proof of facts from which it positively and unequivocally appears that the owner intended to permanently part with his property and vest it in the public, and that there can be no other reasonable explanation of his conduct. Dedication of a roadway may be shown by conduct of the owner and it is not necessary to prove formal overt acts.

***Lay v. Wallace***, 2013 WL 654360, at *2 (Tenn. Ct. App. Feb. 21, 2013) (internal citations and quotations omitted). The court held that, "[m]any years ago there was at least an implied dedication based on Mr. Gordon's receipt of a toll for 35 years and then leaving the road for public use;" it further noted that "[t]here is no dispute that Old Stage Road [] was, in fact, a road utilized by the public from approximately 1823 until the late 1980s to early 1990s." However, it remained disputed whether or not Old Stage Road continued to be used as a public road from that time period forward, or whether it had been abandoned.

To determine whether Old Stage Road remained a public road, the trial court looked to ***Farr v. Pentecost***, 1994 WL 12617 (Tenn. App. 1994). In ***Farr***, the plaintiff filed a complaint alleging that a road was public and asked the trial court to issue an injunction to prohibit the defendant from constructing a fence that would block plaintiff's access. The trial court held the road had been abandoned by nonuse. On appeal, this Court clarified that there must be a positive showing of an intention to abandon, and that nonuse can be indicative of intent. ***Farr v. Pentecost***, 1994 WL 12617, at *3 (Tenn. Ct. App. Jan. 18, 1994). In reviewing the trial court's finding of abandonment by nonuse, this Court, in ***Farr***, considered: the use of the road by the public, the condition of the road,

- 7 -

maintenance of the road by the county or the parties, and any activity inconsistent with the use of the property as a public road. *Id*. It found that the county's maintenance had become minimal or ceased entirely, that the road was in no condition to be used as such, that the road was not listed on the county's roadmap, that the parties did not maintain it as a road, and that there was evidence that a tree had grown in the middle of the road. The foregoing was held to indicate that the road had been intentionally abandoned as a public road:

> This activity is inconsistent with the use of the property as a public road and the public's acquiescence in these activities is indicative of an intent to abandon it as a public road. There was some evidence that the public could and occasionally did walk through [the disputed road]. This evidence is insufficient to overcome the burden of correctness with which the [trial] court's finding of abandonment comes to this court.

*Id*. This Court affirmed the trial court's holding that the road had been abandoned.

Applying these considerations to the present matter, and reaching the same conclusion, the trial court stated that

> Old Stage Road has never been included on Roane County's list of county roads. No residents live along the road in question at the present time and have not lived in that area for many years. Roane County has never maintained the roadway in question. No one from the public has made any effort to maintain the road since at least the early 1990s and quite likely since the 1973 flood. There are no businesses or commercial activity in the area in question. The [c]ourt has previously determined by granting a [m]otion for [s]ummary [j]udgment that the creek along the road is a non-navigable waterway and that [d]efendants own the land under the creek and on both sides of the creek.

In addition, the trial court considered the Supreme Court's pronouncement, in ***Shelby v. State***, 29 Tenn. 165 (1849):

> [a]nd if the public ceases to use a road and adopt another, and there upon, the owner of the soil of which the old road passed, resume use and occupancy thereof, and the public acquiesce therein for a period of 3 years, discontinuance, or abandonment of the old road may well be presumed. In absence of all evidence indicating a contrary intention on part

- 8 -

of the public…The use of the old road by a few individuals in the immediate vicinity thereof, for purposes of mere private convenience, furnishing no evidence sufficient to repel the presumption of abandonment by the public.

*Shelby v. State*, 29 Tenn. 165 (1849). Here, the trial court determined the evidence indicates that the disputed road ceased being used by the public in or about the mid-1970s to the early 1990s. After defendants purchased their property in 1991, there was no maintenance except by the defendants. Then, in the early 1990s, the area flooded, and the road was eroded. For a few years in the 1990s, defendants permitted access to the creek, posted rules for permissible use, and placed a trashcan to help facilitate adherence to the rules. However, no one that utilized the area took care to maintain the area or to improve its condition. Instead, users stole the garbage can and trashed the area. From 2009 to 2015, there was no known use of the area in question except by defendants. The court held that

> '[t]he public' who visited the area for swimming and hunting took no action to maintain the road. From the proof, 'the public' really only wanted to access the creek for recreational purposes. 'The public's' only acts were to leave garbage and be disrespectful to the property. The area has not existed as a road for at least 25 years. This length of non-use is indicative of intent to abandon. No action by the county or public to maintain occurred. No one has offered to work on the road. The only requested use has been recreational. The inability for the fire crews to access the properties that were burning and the failure of the public or the county to take action is indicative of intent to abandon. Additionally, a 16 year-old tree is growing in the area and no one has cut it down. Trees have fallen across the road which have never been removed. In the area along White's Creek, the 'road' has been taken away by acts of nature and 'the public' has done nothing to restore it.

Based on the foregoing, the court held that defendants had shown by clear and convincing evidence that public use of the area in question has been abandoned. The area was held to be the private property of defendants.

Lastly, the trial court considered whether any adjoining land owners might have a private easement of access to their premises. The court held that there were no concerns in this regard, because defendants own the land on both sides of the creek and plaintiff's property does not abut the alleged roadway. Furthermore, the trial court reminded that

plaintiff has another reasonable or practicable means of ingress or egress, and therefore he is not entitled to a private easement over the disputed road area. Plaintiff appeals.

## II.

Plaintiff asks this Court to consider whether the evidence preponderates against the trial court's finding that the use of the road as a public road has been abandoned.

## III.

In this bench trial, our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); ***Bogan v. Bogan,*** 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. ***S. Constructors, Inc. v. Loudon County Bd. of Educ.***, 58 S.W.3d 706, 710 (Tenn. 2001).

## IV.

Plaintiff argues that the trial court erred in finding that use of Old Stage Road ceased around the early 1990s and that it has been abandoned as a public road. He argues that the "record indicates that during this time the public continued to use the road to access the Whites Creek gorge to camp, hunt, fish, swim, and work." Plaintiff alleges that the road was continuously used from the early 1990s to the present.

As outlined *infra*, the evidence indicates that a severe storm caused Whites Creek to rise and erode the disputed road in the early 1990s. No one ever repaired or re-established Old Stage Road, and it never returned to a useable condition. The public has not made any effort to maintain the disputed road since the early 1990s, at the latest. The county has never maintained the roadway, because it is not a county road. The disputed road has been edited off of current maps. The evidence indicates that trees and boulders have fallen across the road, and no one has come to remove them. A 16 year-old tree is growing on the alleged road and no one has cut it down. The trial court therefore correctly held that "the 'road' has been taken away by acts of nature and 'the public' has done nothing to restore it." As stated by the trial court, at the latest, use entirely ceased "[f]rom 2009 to 2015 [when] there was no known use of the area in question except by [d]efendants."

Plaintiff further argues that there was no abandonment, because there is evidence that the public occasionally walked through the disputed road to access defendants' private property for recreation. However, the evidence is negligible and ultimately insufficient to overcome the burden of correctness with which the trial court's finding of abandonment comes to this Court. *See,* ***Farr v. Pentecost***, 1994 WL 12617, at *3

(holding that some evidence that the public could and occasionally did walk through the disputed road is insufficient to overcome the burden of correctness with which the trial court's finding of abandonment comes to this court.); *see also*, **Shelby v. State**, 29 Tenn. 165 (1849) (holding that the use of an old road by a few individuals for private convenience is insufficient to repel the presumption of abandonment by the public). We hold that the evidence does not preponderate against the trial court's finding that public use of the disputed road has been intentionally abandoned. Accordingly, we affirm.

## V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Albert J. Ahler. Case remanded for enforcement of the trial court's judgment and collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE